*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

3M COMPANY,

       Plaintiff-Appellee,

v

DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY,

       Defendant-Appellant.

FOR PUBLICATION
August 22, 2023

No. 364067
Court of Claims
LC No. 21-000078-MZ

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

MALDONADO, J. (*dissenting*).

I would reverse the trial court's order granting summary disposition in favor of 3M Company because I do not believe that MCL 24.245(3)(n) requires EGLE to provide estimated costs of compliance with the changes in the groundwater standards that were a ripple effect of the new rules governing drinking water. Accordingly, I dissent.

## I. DISCUSSION

In my opinion, the Court of Claims erred by holding that the Department was obligated to estimate compliance costs other than those flowing directly from the actual proposed rule.

I agree that a ripple effect of Part 201 of the NREPA is that whenever EGLE sets drinking water standards it is also setting groundwater cleanup criterion. I also agree that EGLE, nevertheless, did not provide estimates of compliance costs with the new groundwater cleanup criterion in the RIS it prepared for the new drinking water standards. However, because MCL 24.245(3)(n) only requires EGLE to estimate costs of *the proposed rule*, and the proposed rule was the drinking-water rule, I believe EGLE only needed to provide an estimate of the costs for businesses and other groups to comply with the drinking-water rule; it did not need to provide an estimate of the costs that businesses and other groups might incur as a result of the groundwater-cleanup provisions found in Part 201 of NREPA.

MCL 24.245(3)(n) provides that the agency must include in its regulatory-impact statement "[a]n estimate of the actual statewide compliance costs *of the proposed rule* on businesses and

-1-

other groups." (Emphasis added.) The words "the" and "a" have different meanings, with the word "the" being a definite article and the word "a" being an indefinite article. *Robinson v Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010). The word "a" has general application, while the word "the" refers to a specific thing. *Id*. The APA uses words like "the rule" and "the proposed rule" to refer to a rule "as it moves through the rulemaking process." *Mich Charitable Gaming*, 310 Mich App at 599. Considering the language of MCL 24.245(3)(n) in its grammatical context, the word "the" modifies the phrase "proposed rule." Further, when these words are considered in the fuller statutory context, this requirement is contained within a list of requirements addressing the proposed rule. See MCL 24.245(2). In this case, the proposed rule set is 2019-35 EG, "Supplying Water to the Public." These rules "pertain[ed] to establishing drinking water standards for public water supplies" and were related to the SDWA. While it is not disputed that adopting the proposed drinking-water rules under the SDWA inevitably has a ripple effect on the groundwater-cleanup rules under Part 201 of the NREPA, the groundwater-cleanup rules were not the rules that were part of this specific regulatory process. Therefore, EGLE's regulatory-impact statement for the proposed rule under the SDWA is sufficient.

EGLE did identify the estimated actual statewide compliance costs of the proposed drinking-water rule on businesses and groups. It identified those businesses and groups as those with their own water supplies, such as condominiums, apartment buildings, residential units, industries, and small businesses that were not connected to municipal water. EGLE did estimate the costs to businesses and groups regarding the drinking-water rules. It did not estimate ancillary costs that would result from changes to other standards as a result of the proposed rule, but the APA does not require it to do so.

I agree with 3M Company, the Court of Claims, and the majority that, by creating rules regulating PFAS in drinking water, the Department was able to entirely avoid calculating groundwater-cleanup costs to Michigan businesses. This appears to be a loophole in the rulemaking process, but this Court defers to the Legislature regarding matters with complex social and policy ramifications. *Gavrilides Mgt Co, LLC v Mich Ins Co*, 340 Mich App 306, 317; 985 NW2d 919 (2022). That a statute appears to be inconvenient, unnecessary, or unwise is not a reason for this Court to avoid the application of plain statutory language. *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012). Pursuant to Part 201, if drinking-water standards have been established pursuant to the SDWA, groundwater-cleanup criteria are derived from those standards. MCL 324.20120a(5). The Legislature decided to tie groundwater-cleanup standards directly to drinking-water standards. The APA does not require a regulatory-impact statement for one proposed rule to account for ripple effects in other rules, which is what has occurred in this case.

## II. CONCLUSION

Because I believe the Court of Claims applied incorrect legal principles when it interpreted MCL 24.245(3)(n) to require the Department to estimate costs for other proposed rules ancillary to *the* proposed rule addressed by a regulatory-impact statement, I would reverse. Therefore, respectfully, I dissent.

/s/ Allie Greenleaf Maldonado