Memorandum Opinion. The single issue we consider in this case is whether the “frank communication” exemption, MCL 15.243(1)(m), of the Freedom of Information Act (FOIA), exempts communications and notes that are no longer preliminary to a final agency determination of policy or action, even if those communications and notes were preliminary at the time that they were made. The Court of Appeals held that the frank communication exemption does not protect from disclosure communications and notes that are no longer preliminary to a final agency determination of policy or action. We reject that holding. The phrase “preliminary to a final agency determination of policy or action” forms part of the statutory definition of a “frank communication.” The statutory definition, however, contains no reference to the timing of the FOIA request. Thus, it is only pertinent whether those communications and notes were preliminary to a final agency determination at the time they were created, not whether they were preliminary at the time the FOIA request was made. Accordingly, we reverse the Court of Appeals judgment and remand this case to the trial court for further proceedings consistent with this decision.
I. FACTS AND PROCEDURAL HISTORY
In May 2000, Detroit Police Chief Benny Napoleon directed Deputy Chief Walter Shoulders to head a three-person Executive Board of Review to investigate a perceived problem of police officer misconduct, particu *271 larly by Officer Eugene Brown,[1] and the department’s subsequent mishandling of investigations of that misconduct. In October 2000, the board completed and compiled its findings and recommendations in a written document known as the Shoulders Report. The Shoulders Report included information about the shootings, facts about Officer Brown’s background, training, and disciplinary history, and interviews from eyewitnesses, coworkers, and other persons.
In June 2002, plaintiff Diane Bukowski, a reporter with coplaintiff Michigan Citizen, sought a copy of the Shoulders Report through a FOIA request. Defendant denied the request, invoking exemptions under MCL 15.243(1)(b)(i) and (ii),[2] and the frank communication exemption, MCL 15.243(1)(m). Plaintiffs subsequently filed suit against defendant, seeking the report pursuant to the FOIA. Both sides moved for summary disposition. Defendant conceded in the trial court that it was no longer relying on the exemption in MCL 15.243(1)(b) because the Wayne County Prosecutor had declined to file charges against Officer Brown. Defendant, however, *272 continued to assert the frank communication exemption and also claimed that the report was exempt under the law enforcement personnel records exemption, MCL 15.243(s)(ix).[3]
The trial court granted in part and denied in part the parties’ motions for summary disposition. It ruled that “the government has met its burden of proving that much of the Shoulders report is exempt and those portions of the report that are not specifically exempted and are pure and factual are discoverable.” It ordered the redaction of the deliberative portions of the Shoulders Report and ordered disclosure of the factual material to plaintiffs. The trial court denied plaintiffs’ request for an in camera inspection of the report.
Both sides appealed the trial court’s decision. The Court of Appeals, in an unpublished opinion per curiam, reversed the trial court and remanded for further proceedings.[4] With respect to the frank communication exemption, the panel opined:
Plaintiff argues that, although the Shoulders Report may have been prepared as “preliminary to a final agency determination of policy or action,” the frank communications exemption does not apply because there is no evidence that the Shoulders Report is currently preliminary to any agency determination of policy or action. We direct the trial court to address this issue on remand. On remand, the court should take into account that MCL 15.243(1)(m) provides that the frank communications exemption applies only if the communications “are preliminary to a final agency determination of policy or action” (emphasis added), not “were preliminary to a final agency determina *273 tion of policy or action.” Thus, if the Shoulders Report contains communications that are no longer preliminary to an agency determination of policy or action, the frank communications exemption does not apply to these communications. [Slip op at 5-6.]
The panel remanded so the trial court could apply the frank communication exemption consistent with its ruling and could separate the purely factual material in the process.[5]
Defendant filed an application for leave to appeal in this Court. We ordered oral argument on the application, specifically requesting the parties to address
whether the Court of Appeals erred in instructing the Wayne Circuit Court, on remand, that the Freedom of Information Act “frank communications” exemption, MCL 15.243(1)(m), does not apply to communications that are no longer preliminary to an agency determination of policy or action, even if the communications were preliminary at the time that they were made. [477 Mich 960 (2006).]
II. STANDARD OF REVIEW
This Court reviews questions of statutory interpretation de novo.[6] The goal of statutory interpretation is to give effect to the Legislature’s intent as determined from the language of the statute.[7] In order to accom *274 plish this goal, this Court interprets every word, phrase, and clause in a statute to avoid rendering any portion of the statute nugatory or surplusage.[8] We give the words of a statute their plain, ordinary meaning unless the Legislature employs a term of art.[9]
III. ANALYSIS
The frank communication exemption, MCL 15.243(1)(m), states in pertinent part:
(1) A public body may exempt from disclosure as a public record under this act any of the following:
(m) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure .... [Emphasis added.]
In Herald Co, this Court examined the frank communication exemption. Drawing from the text of this provision and other portions of the FOIA, we set forth a framework for courts to apply the frank communication exemption. First, the public body seeking to withhold the document bears the burden of establishing the exemption. Second, the public record sought to be withheld from disclosure must meet the three-part statutory definition of a “frank communication”: (1) it is a communication or note of an advisory nature made *275 within a public body or between public bodies, (2) it covers other than purely factual material, and (3) it is prehminary to a final agency determination of policy or action. Third, if the public record qualifies as a “frank communication,” the trial court must engage in the balancing test and determine if the public interest in encouraging frank communication clearly outweighs the public interest in disclosure. Finally, if the trial court determines that the frank communication should not be disclosed, the FOIA still requires the trial court to redact the exempt material and disclose the purely factual material within the document.[10]
The Court of Appeals instructed the trial court that
the frank communications exemption applies only if the communications “are preliminary to a final agency determination of policy or action” (emphasis added), not “were preliminary to a final agency determination of policy or action.” Thus, if the Shoulders Report contains communications that are no longer preliminary to an agency determination of policy or action, the frank communications exemption does not apply to these communications. [Slip op at 6.]
The Court of Appeals misconstrued the frank communication exemption because the requirement that communications or notes “are preliminary to a final agency determination of policy or action” has nothing to do with the timing of the FOIA request. Rather, this phrase speaks to the purpose of the communications or notes at the time of their creation. The first sentence of MCL 15.243(1)(m) provides the definition of a “frank communication.” It qualifies what types of communications and notes are eligible for exemption under this provision. The phrase “are prehminary to a final agency determination of policy or action” modifies “communi *276 cations and notes.”[11] The inclusion of this limiting phrase signifies the Legislature’s intent to exclude from the ambit of the frank communication exemption those communications and notes that were not preliminary to a final agency determination of policy or action when they were created. Therefore, plaintiffs’ and Justice KELLY’s reliance on the Legislature’s use of the present tense “are” in that phrase is misplaced. Our reading of the statute gives effect to the present tense of the verb because the communications or notes “are preliminary to a final agency determination” at the time they are created.[12]
Moreover, we find additional textual support in other FOIA exemptions where the Legislature drafted explicit time limits when an exemption ceases to protect a public record. For instance, MCL 15.243(1)(i) exempts “[a] bid or proposal by a person to enter into a contract or agreement, until the time for the public opening of bids of proposals, or . . . until the deadline for submission of bids or proposals has expired.” (Emphasis added.) Similarly, MCL 15.243(1)(j) exempts “Appraisals of real property to be acquired by the public body until” either “an agreement is entered into” or “three years have elapsed since the making of the appraisal, *277 unless litigation relative to the acquisition has not yet terminated.” MCL 15.243(1)(p) exempts particular types of testing data developed by a public body except that the exemption ceases to apply “after 1 year has elapsed from the time the public body completes the testing.” The absence of similar explicit time limits in the frank communication exemption supplies further evidence that the Legislature intended this exemption to apply to communications and notes after the final agency determination of policy or action has been made.[13]
For these reasons, we reject the Court of Appeals reading of the frank communication exemption. We reverse the judgment of the Court of Appeals on this *278 issue, and we remand this case to the trial court for further proceedings consistent with this opinion.
Taylor, C.J., and Corrigan, Young, and Markman, JJ., concurred.

 Officer Brown had been involved in the fatal shootings of three civilians and the wounding of a fourth in four separate incidents from 1995 to 1999.

 MCL 15.243(1)(b)(i) and (ii) state, in pertinent part:
(1) A public body may exempt from disclosure as a public record under this act any of the following:
(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:
(i) Interfere with law enforcement proceedings.
(ii) Deprive a person of the right to a fair trial or impartial administrative adjudication.

 Defendant also maintained that the Employee Right to Know Act, MCL 423.509(2), protected from disclosure certain information taken from Brown’s personnel file.

 Bukowski v Detroit, unpublished opinion per curiam of the Court of Appeals, issued May 26, 2005 (Docket No. 256893).

 The Court of Appeals also held that the trial court misapplied the burdens in the balancing test found in the personnel records exemption. It remanded the case to the trial court for proper application of the exemption.
Finally, the Court rejected plaintiffs’ argument on cross-appeal that the trial court erred in rejecting their requests for an in camera inspection of the Shoulders Report.

 Herald Co v Eastern Michigan Univ Bd of Regents, 475 Mich 463, 470; 719 NW2d 19 (2006).

 Miller v Miller, 474 Mich 27, 30; 707 NW2d 341 (2005).

 Herald Co, supra, 475 Mich at 470.

 Veenstra v Washtenaw Country Club, 466 Mich 155, 160; 645 NW2d 643 (2002); MCL 8.3a.

 Herald Co, supra, 475 Mich at 475.

 The communications or notes, in addition to being “prehminary to a final agency determination of policy or action” must also be (1) of an advisory nature made within a public body or between public bodies that (2) covers other than purely factual material.

 Justice Kelly argues that there was no longer a need for frank communications at the time of the FOIA request. However, before that determination is made by balancing the competing interests, a court must first consider whether “frank communications” are at issue. One part of the definition of a frank communication is that the communications and notes “are prehminary to a final agency determination” at the time they are created. Unless the communications and notes satisfy this part of the definition, the public body cannot successfully invoke this exemption.

 Both sides present arguments unrelated to the statutory language at issue. Defendant argues that it would he poor public policy if the frank communication exemption ceased to apply to a public record once the agency makes its final determination. Plaintiffs argue that the legislative history behind the frank communication exemption supports their interpretation of the provision, and they draw parallels between this statute and similar provisions in the federal FOIA. Justice Kelly also relies heavily on legislative history, the federal FOIA, the “general purpose” of the FOIA to disclose public records, and the notion that FOIA exemptions are to be narrowly construed. As the plain language in the statute is sufficient to discern the Legislature’s intent and to resolve this case, we decline to consider these nontextual arguments.
Justice Kelly makes the astonishing argument that adherence to the statutory language makes a court “deliberately uninformed” and more prone to impose its policy preferences. Whether or not statutory construction is difficult, we are certain that, far and away, the most “rehable source” of legislative intent is the plain language of a statute. Judicial power is most menacing when a court feels free to roam in search of interpretive cues that are unmoored to the statutory language. Therefore, we are not inclined to inform ourselves of extratextual sources where the language of the statute is plain. When grammar is the constructive tool of choice, all can readily ascertain what a statute commands. But when extratextual tools are brought to bear on otherwise unambiguous language, only judges can say what the statute “means”— and then only after the fact. We prefer interpretive methods available to all.