# STATE OF MICHIGAN

# COURT OF APPEALS

PBM NUTRITIONALS LLC,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

UNPUBLISHED
May 26, 2016

No. 324471
Court of Claims
LC No. 13-000140-MT

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right an order of the Court of Claims denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and granting summary disposition to defendant under MCR 2.116(I)(2). We affirm.

This case concerns defendant's 2007 audit of plaintiff under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*[1] The SBTA required that for tax year 2007, a taxpayer's tax base should be apportioned to Michigan by multiplying the tax base by a percentage equal to the sum of the property factor multiplied by 3.75%, the payroll factor multiplied by 3.75%, and the sales factor multiplied by 92.5%. MCL 208.45a(2). "The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer everywhere during the tax year." MCL 208.51. The SBTA stated that the total sales of the taxpayer in this state encompassed circumstances in which, "[f]or tax years beginning on and after January 1, 1998, the property is shipped or delivered to any purchaser within this state regardless of the free on board point or other conditions of sale." MCL 208.52(b).

Plaintiff is a manufacturer of infant formula whose manufacturing plant is located in Vermont. PBM Products LLC (Products) is a marketing company that buys and markets

---

[1] This act was repealed for tax years that begin after December 31, 2007. 2006 PA 325, § 1. However, the repeal did not affect the enforcement of the tax for previous years; "[t]he obligation of taxpayers and the state for taxes levied or collected on business activity on or before December 31, 2007 is affirmed." MCL 208.153.

plaintiff's formula. After the formula is manufactured at the plant in Vermont, it is shipped by Total Quality, Inc. (TQI), to TQI's warehouse in Grand Haven, Michigan. Products would find a purchaser for the formula, for example Wal-Mart or Target, and notify TQI and plaintiff of the buyer's address. TQI would then ship the formula to the ultimate purchaser. Products's former Associate Director of Operations, Gordon Shelton, averred that plaintiff is the one who maintains ownership and control of the formula while it is in the warehouse in Grand Haven. However, invoices show that TQI billed Products, not plaintiff, for the warehousing services. TQI's Vice President, Barry Waters, attested that the warehousing services for the formula were performed for plaintiff and that at no time did any employee of Products or plaintiff handle the formula while it was at TQI's warehouse in Michigan. No written contracts between any of the parties were introduced in the record.

Defendant conducted an audit of plaintiff for tax year 2007 and determined that when plaintiff shipped and delivered its formula to the TQI warehouse in Grand Haven, it had shipped or delivered the formula to a purchaser, Products, in Michigan. Therefore, defendant concluded that pursuant to MCL 208.52, all of plaintiff's sales should be sourced to Michigan for determining the sales factor in MCL 208.51 that would make up plaintiff's tax base for calculating its taxes owed. Plaintiff disputed this characterization and contended that at no point had it shipped or delivered the formula to Products while the formula was at TQI's warehouse in Michigan and that, therefore, the sales should be sourced to the destinations of the ultimate purchasers, most of which were locations outside of Michigan. After an informal conference recommendation agreed with defendant's position in the audit, defendant adopted the audit's determination in a Final Determination. Plaintiff then paid the disputed amount under protest and brought this action in the Court of Claims.

Plaintiff moved for summary disposition in the Court of Claims, relying primarily on the affidavits of Shelton and Waters. Defendant responded by relying on intercompany invoices showing that plaintiff had sold the formula to Products and that it was Products that sold the formula to the ultimate purchaser. Defendant also attached invoices showing that Products, not plaintiff, was the party that paid TQI for its services.[2] The Court of Claims concluded that plaintiff surrendered control of the formula at the time it was shipped and delivered to TQI's warehouse in Michigan. It held that the formula sales to Products were properly sourced to Michigan for apportionment purposes. Therefore, the Court of Claims denied plaintiff's motion for summary disposition and granted summary disposition to defendant under MCR 2.116(I)(2).

We review de novo a Court of Claims decision regarding a motion for summary disposition. *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 647; 852 NW2d 865 (2014). In evaluating the present motion, we consider the affidavits, pleadings, depositions, admissions, and other evidence in the light most favorable to the non-moving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "In presenting a motion for summary

---

[2] While the invoices themselves do not definitively show that TQI is billing Products for the services it performed with respect to plaintiff's baby formula, plaintiff does not dispute this characterization.

disposition [under MCR 2.116(C)(10)], the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Then the burden shifts to the party opposing the motion "to establish that a genuine issue of disputed fact exists." *Id*. "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings . . . ." *Id*. To the extent resolution of the case turns on a question of statutory interpretation, we review that determination de novo. *Bukowski v City of Detroit*, 478 Mich 268, 273; 732 NW2d 75 (2007).

The resolution of this case turns on whether plaintiff shipped or delivered formula to Products in Michigan such that plaintiff's actions would constitute a sale for purposes of MCL 208.52(b). In *Uniloy Milacron USA, Inc v Dep't of Treasury*, 296 Mich App 93, 98; 815 NW2d 811 (2012), this Court determined that "MCL 208.52(b) was not ambiguous" and must be enforced as written. Quoting *Random House Webster's College Dictionary* (2001), the Court defined " 'deliver' as 'to carry and turn over . . . to the intended recipient or recipients,' 'to give into another's possession or keeping,' to 'hand over,' and to 'surrender,' " and defined " 'ship' as 'to send or transport by ship, rail, truck, plane, etc.' or 'to send away.' " *Uniloy*, 296 Mich App at 98-99. In *Uniloy*, the plaintiff manufactured machines that were sold through a distributor. *Id*. at 95. The distributor would solicit orders for the machines and, once it obtained them, would send the orders to the plaintiff for approval. *Id*. Once the plaintiff approved, the plaintiff would "package, load, and ship" the machines to the customers. *Id*. While title of the machines would transfer from the plaintiff to the distributor and from the distributor to the customers, the distributor never obtained possession of the machines. *Id*.

This Court held that there was no "documentary evidence to support [Treasury's] assertion that the products were shipped or delivered by [the] plaintiff to [the distributor]." *Id*. at 99. The Court found that because neither the distributor "nor its employees took possession of the products, and they were not involved in the packaging, loading, and shipping of the products," and because "the undisputed evidence demonstrates that [the] plaintiff's employees loaded the products onto common carriers for delivery to [the distributor's] customers," the plaintiff's sales were not sourced to Michigan. *Id*. The Court concluded that the "[p]laintiff's sales were not sourced to Michigan merely because [the] plaintiff sold its products to [the distributor] in Michigan for resale." *Id*.

Unlike in *Uniloy*, plaintiff in this case does not package, load, and ship the goods to Products's customers; it ships them to the warehouse in Michigan, where the warehouse owner and operator then packages, loads, and ships the goods. Additionally, there is no indication in the record that plaintiff had to approve Products's sales, as the plaintiff in *Uniloy* had to approve the distributor's sales in that case. Products had the right to sell the formula to the ultimate purchasers and notify TQI of that purchaser's shipping information. Additionally, the hearing referee in the informal conference found that Products's contracts with its customers precluded them from dealing with plaintiff directly, a finding no party current disputes. Defendant also attached invoices to its brief before the Court of Claims showing that TQI billed Products.

As noted in defendant's brief, while plaintiff retained some control of the goods initially, "such control was surrendered to Products, by way of its agent TQI, once the [goods] were

cleared for resale and Products directed TQI to ship the goods to its customers." Under all the circumstances, it is clear that a transfer of goods occurred to Products in Michigan.

Affirmance is appropriate based on the plain language of the statute and proper statutory interpretation. We decline to rely on plaintiff's factually distinguishable or nonbinding citations, or on its unsupported policy argument, to reach a contrary result.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly