# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PILAND, Minors.

FOR PUBLICATION
May 15, 2018
9:15 a.m.

No. 340754
Ingham Circuit Court
Family Division
LC No. 17-000591-NA

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

SHAPIRO, P.J.

In this interlocutory appeal[1] respondents assert that the trial court erred by denying their motion for a proposed jury instruction based on MCL 722.634 in the adjudicative phase of a child protection proceeding. For the reasons set forth below, we reverse the trial court's decision excluding the jury instruction and remand for proceedings consistent with this opinion.

## I. FACTS

On February 6, 2017, respondent mother gave birth to the couple's third child, AP. AP was born at home with the assistance of a midwife, Sandra McCurdy. The day after AP's birth, McCurdy visited respondent's home and expressed concern to respondent mother that AP was suffering from jaundice, a condition common to newborns which, while potentially life-threatening, readily responds to treatment. McCurdy suggested that respondents take AP to the doctor but they did not do so. With respondents' permission, McCurdy contacted a doctor regarding AP's jaundice, but respondents did not reply when the doctor's office tried to reach them. Respondents claim to be members of a Christian sect that believes that no medical treatment may be permitted other than first aid. According to the petition, AP's health continued to degenerate and she died on February 9, 2017.

On that morning, respondents found AP in an unresponsive state. They did not contact emergency medical services, but instead prayed for the child's resurrection. Respondent father later reported that he attempted a "rescue breath" on AP, but did not know how to perform CPR

---

[1] *In re Piland Minors*, unpublished order of the Court of Appeals, issued December 20, 2017 (Docket No. 340754).

1

on a baby, and the only thing he knew to do was to "pray and ask for help from God." Respondents also called members of their church, who came to the home and prayed with them. The police were notified about AP's death eight hours later. An autopsy revealed that AP's cause of death was "unconjugated hyperbilirubinemia with kernicterus."[2] The doctor who performed the autopsy explained that "[j]aundice is a very treatable condition," and that AP would have likely survived if respondents had sought medical attention.

Following AP's death, a Family Team Meeting[3] was held on March 7, 2017. According to petitioner, at that meeting, respondents stated that despite AP's symptoms, they chose to "believe in the word of God over the symptoms," and believed that any medical condition that could not be controlled with basic first aid should be left in the hands of God. Concerned that respondents would decline to seek medical treatment for their remaining two children, MP and JP, petitioner filed a termination petition,[4] which was authorized by the court. MP and JP were then removed from respondents' custody and placed with their maternal grandparents.

Approximately two months later, the trial court issued an ex-parte order returning the children to respondents on condition that they comply with a safety plan, and refrain from using physical discipline. Six days later, respondents requested that the trial court amend the ex-parte order to provide that respondents "may only use physical discipline of any kind upon the children as permitted under Michigan law," on the basis that they sincerely held a religious belief that physical discipline should be used. The children were again removed from respondents' custody for failure to comply with the court's order after it was alleged that respondents said that they would not obey the court order, and that respondent father said that "the children are being trained with physical discipline in obeying my words."

The matter was then scheduled for an adjudication trial before a jury. Prior to trial, respondents requested a jury instruction based on MCL 722.634, which provides:

---

[2] Hyperbilirubinemia is "[a]n abnormally high level of bilirubin in the circulating blood, resulting in clinically apparent icterus or jaundice when the concentration is sufficient." *Stedman's Medical Dictionary* (28th ed), p 918. Kernicterus is "[j]aundice associated with high levels of unconjugated bilirubin, or in small premature infants with more modest degrees of bilirubinemia;. . . characterized early clinically by . . . high pitched cry, lethargy, and poor sucking. . . ." *Stedman's Medical Dictionary* (28th ed), p 1027.

[3] "A Family Team Meeting is an opportunity for parents, extended family members, children (if age appropriate), caregivers and child welfare staff to meet and share ideas that will assist the family in creating and reviewing a plan related to the child(ren)'s safety, stability, well-being and permanence." https://s.michigan.gov/search?site=mdhhs&client=mdhhs&output=xml_no_dtd&proxystylesheet =som_frontend&agencyText=The~Michigan~Department~of~Health~and~Human~Services~( MDHHS)&q=family%20team%20meeting> (accessed April 26, 2018).

[4] The subject petition was filed on March 31, 2017. Petitioner had earlier attempted to file a petition on March 8, 2017, but it was not authorized because more information was needed regarding the autopsy.

A parent or guardian legitimately practicing his religious belief who thereby does not provide medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian. This section shall not preclude a court from ordering the provision of medical services or nonmedical remedial services recognized by state law to a child where the child's health requires it nor does it abrogate the responsibility of a person required to report child abuse or neglect.

Respondents argued that since their defense was based on this statute, the court should provide an instruction reflecting its content. Respondents also argued that their rights under the First Amendment mandated an instruction based on religious liberty. In response, petitioner argued that the instructed should be not be given because the use of the term "negligence," in the statute is a tort concept, and so MCL 722.634 does not apply in the context of child neglect cases. The trial court agreed with petitioner stating:

> The statute in question is [MCL] 722.634. It says a parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian.
>
> [N]egligence law has nothing to do with the law in child protection matters. Therefore, that portion of the statute is not relevant to these proceedings.
>
> The section goes on to say, the section shall not preclude a court from ordering the provision of medical services or non-medical remedial services recognized by state law to a child where the child's health requires it, nor does it abrogate the responsibility of a person required to report child abuse or neglect. So the second part of that paragraph confirms that negligence and neglect are two different bodies of law.

This interlocutory appeal followed.

## II. ANALYSIS

### A. APPLICATION OF MCL 722.634

On appeal, respondents first argue that the trial court erred in holding that the statute does not apply to child protection proceedings. We agree.[5]

MCL 722.634 is a provision of the Child Protection Law, (CPL), MCL 722.621 *et seq.*, the purpose of which "is to protect abused and neglected children."[6] *Becker-Witt v Bd of*

---

[5] This Court reviews de novo "questions of statutory interpretation and constitutional law." *In re Deng*, 314 Mich App 615, 621; 887 NW2d 445 (2016).

[6] The preamble describes the CPL as:

*Examiners of Social Workers*, 256 Mich App 359, 364; 663 NW2d 514 (2003). Analysis of the Legislature's intent with respect MCL 722.634 requires statutory interpretation. "The goal of statutory interpretation is to give effect to the Legislature's intent as determined from the language of the statute." *Bukowski v Detroit*, 478 Mich 268, 273; 732 NW2d 75 (2007). The words in the statute are interpreted in "light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (quotation marks and citation omitted). In addition to a phrase's plain meaning, courts must consider "its purpose and placement in the statutory scheme." *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009).

The trial court's view that this statute does not apply in child protective proceedings is erroneous as it is inconsistent with the statutory language. Child protection proceedings often involve allegations that the parent is negligent in caring for a child. The CPL defines "child neglect" as

> harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:
>
> > (i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care.
>
> > (ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [MCL 722.622(k)(i) and (ii).]

As was stated in *Michigan Ass'n of Intermediate Special Ed Administrators v Dep't of Social Servs*, 207 Mich App 491, 497; 526 NW2d 36 (1994), "[c]hild neglect is harm to a child's

---

> AN ACT to require the reporting of child abuse and neglect by certain persons; to permit the reporting of child abuse and neglect by all persons; *to provide for the protection of children who are abused or neglected*; to authorize limited detainment in protective custody; to authorize medical examinations; to prescribe the powers and duties of the state department of social services to prevent child abuse and neglect; to prescribe certain powers and duties of local law enforcement agencies; to safeguard and enhance the welfare of children and preserve family life; to provide for the appointment of legal counsel; to provide for the abrogation of privileged communications; to provide civil and criminal immunity for certain persons; to provide rules of evidence in certain cases; to provide for confidentiality of records; to provide for the expungement of certain records; to prescribe penalties; and to repeal certain acts and parts of acts. [1975 PA 238 (emphasis added).]

welfare that occurs through negligent treatment or failure to eliminate an unreasonable risk to the child's welfare." We conclude that the mandate of MCL 722.634 applies in child protection proceedings.

There is no standard instruction reflecting the content of MCL 722.634. Thus, the sought instruction is "necessary to state the applicable law accurately, and . . . not adequately covered by other pertinent model civil jury instructions." MCR 2.512(D)(3)(a)-(b). Consistent with MCL 722.634, the trial court must instruct the jury, that "a parent or guardian legitimately practicing his religious belief who thereby does not provide medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian."[7]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly

---

[7] Respondents also argue that they would be entitled to an instruction of this sort even in the absence of MCL 722.634 because the First Amendment guarantees their right to freedom of religion. We disagree. As held by the United States Supreme Court, "[T]he family itself is not beyond regulation in the public interest, as against a claim of religious liberty." *Prince v Massachusetts*, 321 US 158, 166; 64 S Ct 438; 88 L Ed 645 (1944). "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Id*. at 166-167.