*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT LAWRENCE FARIDA

Plaintiff-Appellant,

v

KAREN D. MCDONALD,

Defendant-Appellee.

UNPUBLISHED
November 18, 2025
2:54 PM

No. 373717
Oakland Circuit Court
LC No. 2024-205521-PZ

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

In this action under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, plaintiff appeals as of right the trial court's opinion and order granting summary disposition in defendant's favor under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff also challenges the trial court's opinion and order denying plaintiff's motion for reconsideration and its order following its *in camera* review of unredacted e-mails. For the reasons set forth in this opinion, we affirm in part and reverse in part.

## I. BASIC FACTS

This case arises from plaintiff's FOIA request to defendant for material relevant to presentations made to the employees in the Oakland County Prosecutor's Office (OCPO) as well as e-mails between members of the OCPO and a judge of the Oakland Circuit Court. Plaintiff is a former assistant prosecuting attorney (APA) in the OCPO. On September 25, 2023, plaintiff submitted a FOIA request to defendant which included the following items:

> 1. A copy of the video of the presentation made by Jerry Dosey, IV, (for your reference, this occurred on or about February 25, 2021).

> * * *

> 5. Copies of all recordings of diversity, equity, and inclusion presentations made since January 1, 2021.

-1-

6. Copies of all lists of presenters for the returning citizens presentations made in 2023.

* * *

11. A copy of all emails made between members of the Oakland County Prosecutor's Office (including Karen McDonald) and Judge Lisa Langton since October of 2022.

Defendant denied the request in its entirety on October 17, 2023. After plaintiff filed an appeal to the OCPO, Corporation Counsel Litigator Nicole Tabin responded on behalf of defendant, stating that defendant had reviewed plaintiff's appeal and determined it was appropriate to reverse her initial response. With respect to ¶ 1 of plaintiff's FOIA request, defendant's response stated, in pertinent part:

> **Paragraphs 1 and 5 of your FOIA request are granted**. You may contact me to schedule a time for you to come to my office to view the recordings with no redactions and at no cost to you.
>
> If you seek copies of the recordings, your request will be granted in part. These videos are internal employee development videos. The interest in fostering a safe and effective training environment that promotes candidness and employee engagement clearly outweighs any public interest in providing you with an unredacted copy of the recordings. Additionally, no one in the video - including the presenters – consented to their image in the recordings being publicly disseminated. Thus, redactions would be made pursuant to MCL 15.243(1)(a) (privacy) and (1)(m) (frank communications). If you desire a copy, please let me know and I will send you an estimate for the labor required for duplicating and redacting.

Defendant confirmed her earlier denial of the request with respect to ¶ 6, stating that under MCL 15.233(5), "[t]his act does not require a public body to create a new public record . . . ." Finally, addressing ¶ 11, defendant reversed her earlier position and granted in part plaintiff's request. Specifically, defendant's response provided: "Redactions have been made pursuant to MCL 15.243(1)(m) (frank communications). The records are enclosed and provided to you at no charge." In support of defendant's response to the FOIA appeal, defendant included approximately 15 pages of e-mail communications between Judge Langton, the presiding judge of the family division of the Oakland Circuit Court, defendant, Chief APA David W. Williams, and APA Markeisha Washington, as well as several other employees of Oakland County from October 20, 2022 to November 6, 2023, addressing the prosecutor's docket and discussing a potential collaboration between the Friend of the Court (FOC) and OCPO on matters of child support, FOC pretrials, and domestic violence cases.

After plaintiff filed his complaint, in lieu of filing an answer, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant asserted that plaintiff's claim to compel production of the video he requested in ¶ ¶ 1 and 5 should be dismissed because his claim was not ripe. Defendant argued that plaintiff was able to view "a complete, unredacted version of

-2-

the video." Defendant also asserted that plaintiff was told that he could obtain a copy of the redacted video if he wished, but plaintiff did not request a copy.

Defendant also argued that summary disposition should be granted because she properly denied ¶ 6 of the request on the basis that the public document did not exist and, under MCL 15.233(5), defendant did not have an obligation to create a public record. Finally, defendant contended that all of the e-mails that were responsive to plaintiff's request in ¶ 11 had been provided to plaintiff in redacted form. Defendant asserted that the redactions were necessary to protect the privacy of, and safeguard the frank communications between, the OCPO and Judge Langton. In support of her motion, defendant included a copy of the redacted e-mails provided to plaintiff.

In response, plaintiff conceded that he met with counsel for defendant and Williams on December 7, 2023, and was permitted to watch unredacted videos of the diversity, equity, and inclusion presentations. Plaintiff countered defendant's allegation that his claim regarding his request for the unredacted video was not ripe, asserting that in November 2023, he and defense counsel spoke over the telephone, and plaintiff told defense counsel that he was seeking to secure the recordings of the videos and would accept proposed potential redactions as a compromise. At the December 7, 2023 meeting, plaintiff was asked if he was still seeking copies of the videos, and plaintiff confirmed that this was the case. Plaintiff alleged defendant had not presented a counteroffer or fee estimates for the redacted videos. Plaintiff also claimed that the trial court needed to determine what exemptions, if any, applied to the videos.

Regarding ¶ 6 in the request, plaintiff characterized as "dubious" defendant's assertions that the list requested did not exist. Plaintiff also claimed that he had personal knowledge that he acquired as an APA that the list he requested did in fact exist. Plaintiff also claimed that the trial court should not accept defendant's contention that factual disputes did not exist regarding the existence of the records without permitting further discovery or conducting an evidentiary hearing. Finally, plaintiff argued that the frank communication exemption did not apply to justify redaction of the e-mails between the OCPO and Judge Langton because the e-mails at issue were the only documentation of "a judicial pilot program" with no written policy or standardized rules. Therefore, plaintiff claimed that the public had "an enormous interest in understanding the nature of the program, its origin, and details of its operations."

Following a hearing, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10). Plaintiff unsuccessfully moved for reconsideration, and the trial court, after conducting an *in camera* review, determined that aside from two of the e-mails provided, redaction of the e-mails under the frank communications exemption was appropriate because they addressed the initial stages of a new judicial pilot program in which the OCPO could collaborate and work with the FOC. This appeal follows.

## II. RIPENESS OF PLAINTIFF'S CLAIM TO COMPEL DISCLOSURE OF VIDEO OF DIVERSITY, EQUITY, AND INCLUSION PRESENTATIONS

Plaintiff first contends that the trial court erred in determining that his claim to compel production of the video of the diversity, equity, and inclusion presentations was not ripe. We agree.

## A. STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). A motion under MCR 2.116(C)(10) is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This Court also reviews questions of ripeness de novo. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017).

## B. ANALYSIS

MCL 15.235 and MCL 15.240 address a party's ability to pursue an action in circuit court to compel the production of public records under the FOIA. MCL 15.235 provides, in pertinent part:

> (8) *If a public body makes a final determination* to deny in whole or in part a request to inspect or receive a copy of a public record or portion of that public record, the requesting person may do either of the following:
>
> (a) Appeal the denial to the head of the public body under [MCL 15.240].
>
> (b) Commence a civil action, under [MCL 15.240]. [Emphasis added.]

Likewise, MCL 15.240 provides, in pertinent part:

> (1) If a public body makes a final determination to deny all or a portion of a request, the requesting person may do 1 of the following at his or her option:
>
> (a) Submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason or reasons for reversal of the denial.
>
> (b) *Commence a civil action in the circuit court*, or if the decision of a state public body is at issue, the court of claims, *to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request*. [Emphasis added.]

The trial court determined that plaintiff's claim to compel production of the video was not ripe and dismissed the claim under MCR 2.116(C)(10). The doctrine of ripeness precludes the adjudication of hypothetical or contingent claims in advance of an actual injury being incurred, "and an action is not ripe if it rests on contingent future events that may not occur as anticipated or may not occur at all." *Duncan v Michigan*, 284 Mich App 246, 292; 774 NW2d 89 (2009),

-4-

aff'd on other grounds 486 Mich 906 (2009). In ruling that plaintiff's claim to compel disclosure of the video was not ripe, the trial court primarily relied on *Arabo v Mich Gaming Control Bd*, 310 Mich App 370; 872 NW2d 223 (2015).

In *Arabo*, this Court interpreted a former version of MCL 15.234(2), which stated that a public body could require a deposit from the person requesting the records:

> (2) *A public body may require at the time a request is made* a good faith deposit from the person requesting the public record or series of public records, if the fee authorized under this section exceeds $50.00. The deposit shall not exceed 1/2 of the total fee. [MCL 15.234, as amended by 1996 PA 553 (emphasis added).]

On the basis of this statutory language, the Court concluded that the Legislature contemplated that the public body could recover part of its costs in advance before processing a FOIA request. *Arabo*, 310 Mich App at 387. The phrase " 'at the time the request is made' " meant that a deposit must be given to the public body before it became obligated to process the request to enable it to formally respond with "a final determination" as contemplated by former MCL 15.235(2). *Id*., quoting former MCL 15.234(2). The Court reached this conclusion by reading §§ 4 and 5(2) of the FOIA in harmony as required under the rules of statutory construction. *Arabo*, 310 Mich App at 387. This Court held that it logically followed from the statutory language that the public body's responsibility to answer the FOIA request would only be triggered once the party requesting the records had paid the deposit. *Id*. at 386-387. Such an interpretation of the statute "would enable the public body to recover a portion of its costs before processing the request," which this Court determined was a purpose that the Legislature "clearly contemplated." *Id*. at 387.[1]

As noted, the trial court determined *Arabo* was controlling on plaintiff's claim to compel production of the video because plaintiff did not tender a deposit. *Arabo* dictates that a public body is not required to make a final determination until the requester pays the required deposit; however, nothing in *Arabo* precludes a public body from making a final determination earlier. Unlike the public body in *Arabo*, defendant did not condition a final determination on payment of the deposit.

In the present case, plaintiff pursued an appeal after defendant initially denied plaintiff's request in its entirety on October 17, 2023. On November 7, 2023, defendant responded, granting ¶¶ 1 and 5 of the FOIA request for the video, and asked him to contact her office to schedule a time to view the recordings without redactions. Notably, defendant informed plaintiff that his request was granted in part, but that redactions would be made under MCL 15.243(1)(a) (privacy exemption) and (m) (frank communications exemption). Defendant informed plaintiff, "If you desire a copy, please let me know and I will send you an estimate for the labor required for duplicating and redacting." Defendant acknowledged that she was only granting plaintiff's request for copies of the footage in part, because she would only provide a redacted version. In this respect,

---

[1] We note the statutory language at issue in *Arabo* has since been significantly amended. However, after comparing both versions of the statute, we are satisfied that the Court's reasoning in *Arabo* remains sound as applied to the current version of the statute.

defendant effectively denied plaintiff's request as it related to the unredacted footage. See also, e.g., *King v Mich State Police Dep't*, 303 Mich App 162, 190; 841 NW2d 914 (2013) ("[A]lthough defendant contends that it granted the requests, its response letters reflect that the requests were effectively granted in part and denied in part, as the letters contemplated the separation of exempt material and thereby implicitly denied the requests with respect to such material."). This denial was defendant's final determination on plaintiff's request for the unredacted footage, regardless of whether plaintiff had paid any processing-fee deposit. MCL 15.240(1).

The trial court misapplied the FOIA when it determined defendant had not made a final determination and erred when it dismissed plaintiff's claim with respect to the presentation footage as unripe. Because defendant made a final determination with respect to the presentation footage, plaintiff had sustained the actual injury of having his request denied. *Duncan*, 284 Mich App at 292. Therefore, plaintiff's suit challenging defendant's claimed exemptions and seeking the unredacted footage was ripe. We reverse the trial court with regard to its ripeness determination and remand this case for it to address the merits of plaintiff's exemption challenges.

## III. PUBLIC BODY'S OBLIGATION TO CREATE A RECORD

Plaintiff next argues that the trial court erred in granting summary disposition of his claim to compel disclosure of a list of presenters for the returning citizens presentations in 2023 on the basis that defendant did not have an obligation to produce a record that did not exist. We disagree.

In accordance with the legislative policy underlying the FOIA that all persons are entitled to full and complete information regarding the workings of government and the official acts of public officials and public employees, the FOIA generally requires the full disclosure of public records in a public body's possession. *Herald Co v Bay City*, 463 Mich 111, 118; 614 NW2d 873 (2000). However, there are limitations on the public body's obligation to make full disclosure. MCL 15.233 specifically addresses the duty of a public body once it receives a FOIA request, providing, in pertinent part:

> (4) This act does not require a public body to make a compilation, summary, or report of information, except as required in [MCL 15.241].

> (5) This act does not require a public body to create a new public record, except as required in [MCL 15.241], and to the extent required by this act for the furnishing of copies, or edited copies pursuant to [MCL 15.244(1)] of an already existing public record.

" 'Public record' " is defined in the FOIA as "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." MCL 15.232(h)(*i*). As MCL 15.233(5) makes clear, the FOIA does not require a public body to create a record that does not otherwise exist. *Amberg v Dearborn*, 497 Mich 28, 31; 859 NW2d 674 (2014).

In her November 7, 2023 response to plaintiff's appeal, defendant informed him that his request for a list of those presenting the returning citizens presentations for the OCPO was denied "because no such list exists." In an affidavit filed in support of defendant's motion for summary

disposition, Chief APA Williams averred that no list of presenters for the returning citizens presentations made in 2023 was compiled or ever existed. In his motion and brief in response, plaintiff disputed Williams's statements, arguing that an issue of material fact remained regarding what records defendant possessed relevant to plaintiff's request. Plaintiff drew upon his experience working in the OCPO and his own personal knowledge to refute Williams's statement, claiming that a keycard is necessary to access the OCPO, that the OCPO possessed sensitive materials relevant to its cases, and that the presenters were convicted felons with serious criminal histories. Plaintiff also argued that employees other than Williams were involved in planning the returning citizens presentations, and several APAs viewed the presentations in panels. Therefore, plaintiff questioned Williams's participation in the event giving rise to his request for the list of presenters, as well as if he even had personal knowledge of the relevant facts. Plaintiff also questioned the propriety of the trial court granting summary disposition when discovery had not yet been completed.

To avoid summary disposition under MCR 2.116(C)(10) on the basis that further discovery is necessary, the opposing party must establish that discovery has a "fair chance" of yielding factual support for the opposing party's position. *Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). The mere fact that the discovery period remains open does not "automatically mean" that the granting of summary disposition is premature or otherwise inappropriate. *Id*. If a party opposes a motion for summary disposition on the ground that discovery has not yet been completed, they are required under the court rules to present, by way of affidavit, the facts necessary to support their position. *Id*. at 292-293. Specifically, MCR 2.116(H) provides, in pertinent part:

> (1) A party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure. The affidavit must
>
> (a) name these persons and state why their testimony cannot be procured, and
>
> (b) state the nature of the probable testimony of these persons and the reason for the party's belief that these persons would testify to those facts.

Plaintiff acknowledges that he did not produce evidence or an affidavit under MCR 2.116(H)(1) to support his assertion that additional discovery would have yielded support for his claims. Nonetheless, plaintiff contends that because he signed his briefing while representing himself under MCR 1.109, his personal assertions regarding his knowledge of the office of the OCPO was enough to undermine Williams's averments in his affidavit. MCR 1.109(D) contains requirements for circumstances where a document is verified and provides, in pertinent part:

> (3) Verification. Except when otherwise specifically provided by rule or statute, a document need not be verified or accompanied by an affidavit. If a document is required or permitted to be verified, it may be verified by
>
> (a) oath or affirmation of the party or of someone having knowledge of the facts stated; or

-7-

(b) except as to an affidavit, including the following signed and dated declaration:

"I declare under the penalties of perjury that this _____ has been examined by me and that its contents are true to the best of my information, knowledge, and belief."

Plaintiff's pleading was not a verified complaint because, while it was signed by plaintiff, it was not verified by oath or affirmation, and also did not include the declaration required by MCR 1.109(D)(3)(b).

Defendant moved for summary disposition claiming that factual disputes did not exist for trial and supported her motion with Williams's affidavit confirming that a list of the presenters of the returning citizens presentations did not exist. Once defendant moved for summary disposition and properly supported its motion under the court rule, the burden shifted to plaintiff to establish a genuine issue of material fact for trial and to properly support his response. MCR 2.116(G)(4); *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Plaintiff responded with unsupported allegations that he claimed bolstered his position that the information must exist in the OCPO in some form. It was not sufficient for plaintiff to rely simply on his "mere allegations or denials" in his briefing, but instead he was required to "set forth specific facts showing that a genuine issue of material fact exist[ed]." *Id*. (quotation marks and citation omitted). Without support in the form of an affidavit or other evidence confirming that further discovery would likely yield additional factual support for plaintiff's claim, we are not persuaded that the trial court erred in concluding that there were no genuine issues of material fact as to whether or not a list existed.

## IV. *IN CAMERA* REVIEW OF UNREDACTED E-MAILS

Finally, plaintiff argues that the trial court erred in concluding that the frank communications exemption applied to allow defendant to redact material from e-mails between OCPO members, Judge Langton, and other employees of the circuit court and Oakland County. We disagree.

## A. STANDARDS OF REVIEW

In a FOIA action, we review the trial court's legal determinations de novo. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006). We review the trial court's factual findings that support its decision for clear error. *Id*. at 472. We must defer to those factual findings unless we are left with a definite and firm conviction that a mistake has been made. *Id*. We review the trial court's discretionary decisions, including its balancing of the interests at issue when determining the propriety of redactions, for an abuse of discretion. *Id*. This Court will not disturb the decision of the trial court unless its decision fell outside the range of reasonable and principled outcomes. *Id*.

## B. ANALYSIS

At issue is whether the trial court abused its discretion in holding that defendant's application of the frank communications exemption was appropriate after balancing the interests

of the public in full disclosure of the workings of government against the public's interest in fostering frank communications in the public sector. *Bukowski v Detroit*, 478 Mich 268, 275; 732 NW2d 35 (2007). The party seeking to apply a FOIA exemption bears the onus of establishing its applicability. *Id*. at 274. To apply the frank communications exemption, the following requirements must be established:

> (1) [the public record] is a communication or note of an advisory nature made within a public body or between public bodies, (2) it covers other than purely factual material, and (3) it is preliminary to a final agency determination of policy or action. Third, if the public record qualifies as a "frank communication," the trial court must engage in the balancing test and determine if the public interest in encouraging frank communication clearly outweighs the public interest in disclosure. [*Id*. at 274-275.]

Plaintiff criticizes the trial court's ruling regarding the e-mails on the basis that the FOC and OCPO had not yet finalized a formal policy regarding the pilot program, asserting that the redacted e-mails could therefore not be preliminary to a final determination of policy or action. However, review of the unredacted e-mails makes clear that they documented an ongoing dialogue between governmental and judicial employees to establish a fledgling pilot program intended to streamline Title IV-D child support cases within Oakland County to better serve the public. The e-mails addressed the initial stages of the pilot program, the ways in which the FOC and the OCPO planned to collaborate, a potential timeline for referee and FOC involvement in the cases, and how the cases would be resolved in the pilot program. Therefore, the trial court confirmed that the e-mails were of an advisory nature, that they covered more than factual material, and that they were preliminary to the OCPO and FOC's determination of policy or action. *Id*.

Upon conducting the balancing analysis, the trial court also determined that because the e-mails addressed the collaboration between various departments of the Oakland Circuit Court and the OCPO to create a new pilot program, the public interest in fostering the frank communication within Oakland County and the circuit court outweighed the public interest in being aware of the inner workings of its government. After reviewing the unredacted e-mails, we are satisfied that the trial court duly considered the purpose underlying the potential collaboration inherent in the pilot program, the goals of the program, as well as its attendant benefits to the court, FOC, and the OCPO. As a result, the trial court correctly found that the need to foster open and honest communication between the circuit court and the OCPO outweighed the right of the public to be aware of the discussions that led to the creation of the pilot program.

In response to defendant's motion for summary disposition, plaintiff alleged that there were several negative consequences of the pilot program of which the public needed to be aware, including cases that were needlessly delayed and that low-income families were disproportionately affected. However, plaintiff, while potentially identifying a factual issue of dispute, did not provide adequate evidentiary support to withstand summary disposition. *Lowrey*, 500 Mich at 7; MCR 2.116(G)(4). Accordingly, we are not persuaded that the trial court abused its discretion.

Affirmed in part and reversed in part. We remand to the trial court with respect to the presentation footage for it to address the merits of plaintiff's exemption challenges. We do not retain jurisdiction.


/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel