*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WEXFORD PARKHOMES CONDOMINIUM
ASSOCIATION,

UNPUBLISHED
February 6, 2020

Plaintiff-Appellant/Cross-Appellee,

v

No. 345611
Oakland Circuit Court
LC No. 2018-163312-CH

VIRGINIA KAJMA,

Defendant,

and

LINDA MARIE KAJMA,

Defendant-Appellee/Cross-
Appellant.

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's opinion and order granting summary disposition in its favor, but awarding it only partial attorney fees. On cross-appeal, defendant, Linda Kajma, challenges the trial court's decision to grant summary disposition in plaintiff's favor and its failure to address violations of the Fair Debt Collection Practices Act (FDCPA), 15 USC 1692, *et seq*. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Linda and her mother, Virginia Kajma, now deceased, were the co-owners of a condominium located in the Wexford Parkhomes Condominium Project (Wexford) run by plaintiff. As co-owners of a condominium at Wexford, defendants were bound by the bylaws established by plaintiff. Under the relevant bylaws, plaintiff could make annual assessments against each unit for expenses arising from the management, administration, and operation of the condominium association, among other things. See Article II. The owners were required to pay

the assessment in 12 equal monthly installments, due on the first day of each month. If any part of the assessment was not paid to plaintiff on or before the due date, the payment was in default. Article II, Sections 2(a) and 3.

Defendants became delinquent in their assessment payment in December 2016. Plaintiff thereafter sent defendants several letters notifying them of their delinquency. On June 19, 2017, Linda contacted Karen Crouse, the property manager for plaintiff's condominium project, and informed Crouse that she had sent a check to pay a portion of the unpaid balance and would bring the account up to date as soon as possible. The following day, on June 20, 2017, plaintiff's attorneys, The Meisner Law Group, sent a letter to defendants informing them that plaintiff was seeking to collect the delinquent assessment dues they had failed to pay and attached a copy of the lien that was eventually recorded on June 23, 2017. Over the course of the next few months, Linda made several payments toward the unpaid assessments, but never completely paid off the entire balance. Several of the checks she sent were returned to her because, as plaintiff indicated to her, Linda included restrictions in the memo line of the checks that were contrary to the bylaws and rules and regulations that outlined the order in which payments would be made.

In January 2018, plaintiff sued defendants, seeking to foreclose on the statutory lien it had filed and recorded, and to collect the delinquent assessments and late charges. In May 2018, plaintiff moved for summary disposition, arguing that there was no genuine issue of material fact that its bylaws authorized it to file and foreclose on the lien, that defendants were in default, and that plaintiff was also entitled to an award of costs and reasonable attorney fees. After a hearing on the motion, the trial court agreed with plaintiff and entered an opinion and order granting summary disposition in plaintiff's favor, but awarded plaintiff only part of its requested attorney fees and costs. This appeal and cross appeal followed.

## II. APPEAL

On appeal, plaintiff challenges the trial court's refusal to award it all of its requested attorney fees. Plaintiff argues that the trial court erred in declining to award plaintiff its requested attorney fees related to work performed by Teresa Duddles, a paralegal who works with plaintiff's attorneys, in refusing to award actual attorney fees, in reducing the hourly rate of the attorney fees awarded, and in refusing to award certain attorney fees and costs.

This Court reviews a trial court's decision to award attorney fees and the reasonableness of the attorney fees awarded for an abuse of discretion. *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Berger v Berger*, 277 Mich App 700, 723; 747 NW2d 336 (2008). The factual findings underlying an award of attorney fees are reviewed for clear error, and any underlying questions of law are reviewed de novo. *Brown v Home Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012). A finding of the trial court is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *Id.* To the extent that this appeal and the cross-appeal concern the bylaws governing the condominium association, we review the interpretation of a condominium association's bylaws de novo. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).

Attorney fees are recoverable if expressly provided for by a contract between the parties. *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). Under MCL 559.153, "[t]he administration of a condominium project shall be governed by bylaws recorded as part of the master deed, or as provided in the master deed." Such an entity's bylaws, when validly promulgated, are a contractual agreement between the entity and its members. *Conlin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015).

Article II, Section 5 of the condominium bylaws provides, in relevant part:

> The expenses incurred in collecting unpaid assessments, including interest, expenses of collection, costs, late charges, actual attorney fees (not limited to statutory fees and attorney's fees and expenses incurred in connection with the Co-owner's bankruptcy and probate proceedings and appeals) and advances for taxes or other liens paid by the Association to protect its lien, shall be chargeable to the Co-owner in default and shall be secured by the lien on the Co-owner's Unit.

There is no argument that the above, or the bylaws in general, were not validly promulgated. As a result, plaintiff can recover attorney fees under the bylaws in this case. However, "[t]he party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007).

Turning to plaintiff's first argument, that the trial court erred in refusing to award it fees for work performed by its paralegal, MCR 2.626 states:

> An award of attorney fees may include an award for the time and labor of any legal assistant who contributed nonclerical, legal support under the supervision of an attorney, provided the legal assistant meets the criteria set forth in Article 1, § 6 of the Bylaws of the State Bar of Michigan.

Article I, Section 6 of the Bylaws of the State Bar of Michigan states that any person employed by a lawyer or law office that performs substantive legal work which is not primarily clerical or secretarial in nature may become a Legal Assistant Affiliate Member of the State Bar of Michigan if they provide proof of any of the following: that they have a bachelor's degree in legal assistance; a bachelor's degree in any field and at least two years of in-house training as a legal assistant; an associates degree in legal assistance plus at least two years of in-house training as a legal assistant; an associates degree in any field and graduation from a legal assistant program plus at least two years of in-house training as a legal assistant; or, at least four years of in-house training as a legal assistant.

The trial court initially denied the payment of fees in relation to Duddles because she was not an attorney. On plaintiff's motion for reconsideration, the trial court declined to award the same because plaintiff made only assertions as to Duddles' qualifications rather than provide documentary evidence to support a claim that she met the qualifications set forth in Article 1, Section 6 of the Bylaws of the State Bar of Michigan. The court also noted that plaintiff failed to explain how the work performed by Duddles was nonclerical, legal support and that the fee and cost list submitted by plaintiff contained vague descriptions of Duddles' work. On appeal, plaintiff argues that counsel's statements and argument regarding paralegal Duddles' qualifications and

education in its motion for reconsideration, signed by counsel as an officer of the court, constitute more than mere assertions and should have been sufficient to satisfy the requirements of MCR 2.626 and Article I, Section 6 of the Bylaws of the State Bar of Michigan. We disagree.

Counsel's statements and arguments do not constitute evidence. *Zantop Int'l Airlines, Inc v Eastern Airlines*, 200 Mich App 344, 364; 503 NW2d 915 (1993), citing SJI2d 3.04. And clear error exists when there is no evidentiary support for the factual findings of the trial court. *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007). Plaintiff did not attach any documentary evidence to either its motion for summary disposition or its motion for reconsideration to support its assertions that Duddles met the requirements of MCR 2.626 and Article I, Section 6 of the Bylaws of the State Bar of Michigan. As a result, the statements in plaintiff's motion for reconsideration were not evidence of Duddles' education and qualifications as a paralegal and clear error would have occurred had the trial court relied upon counsel's mere assertions to find otherwise.

Next, plaintiff argues that the trial court abused its discretion when it declined to award it *actual* attorney fees as provided in Article II, Section 5 of the association bylaws. We find that plaintiff has waived review of this issue.

An issue is preserved for appellate review if it is raised in the lower court and pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 182-183; 521 NW2d 499 (1994). "Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a failure to timely raise an issue waives review of that issue on appeal." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (quotation marks and citations omitted). In its motion for summary disposition, plaintiff argued that it was entitled to attorney fees for the work performed by Meisner, Harris, and Duddles. Both in that motion and on reconsideration, however, plaintiff's argument focused on the *reasonableness* of the attorney fees requested. Plaintiff, for the first time on appeal, however, argues that it is entitled to its *actual* attorney fees, apparently without reference or analysis to whether the claimed fees were reasonable. Because plaintiff did not assert that it was entitled to actual attorney fees below, and the trial court did not address any such argument, plaintiff has waived review of the issue.

Plaintiff next argues that the trial court abused its discretion when it reduced attorney Brian Harris' hourly rate from $275 per hour to $265 per hour. The trial court explicitly and specifically explained its reasoning for the reduction in its written opinion and order. Plaintiff, on the other hand, simply announces its position that Harris' hourly rate should not have been reduced and provides no citation of supporting authority. Plaintiff merely argues that there was "no rational basis for such a reduction" given that condominium association law requires specialized knowledge of governing documents and applicable state and federal statutory provisions.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issues." *Id*. at 339-340 (citation omitted). Because plaintiff failed to properly address the merits of its assertion of error by failing to cite supporting authority, it has abandoned the issue on appeal and this Court declines to address this issue.

Finally, plaintiff argues that the trial court abused its discretion when it limited other attorney fees and costs awarded, including reducing the hours that Meisner and Harris billed for various activities related to this case. We agree, in part.

In *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), our Supreme Court articulated the framework for determining a reasonable attorney fee:

> In determining a reasonable attorney fee, a trial court should first determine the fee customarily charged in the locality for similar legal services. In general, the court shall make this determination using reliable surveys or other credible evidence. Then, the court should multiply that amount by the reasonable number of hours expended in the case. The court may consider making adjustments up or down to this base number in light of the other factors listed in *Wood* [*v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982)] and MRPC 1.5(a). [*Smith*, 481 Mich at 537.]

The *Wood* factors include:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Wood*, 413 Mich at 588 (citation omitted).]

Additionally, Rule 1.5(a) of the Michigan Rules of Professional Conduct provides the following factors to be considered in determining a reasonable attorney fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent. [MRPC 1.5(a)]

"[T]he burden of proving reasonableness rests with the party requesting the fees." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281 n 45; 884 NW2d 257 (2016), citing *Smith*, 481 Mich

at 528-529. "With respect to the reasonable hourly rate, 'the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality.' " *Pirgu*, 499 Mich at 281 n 45, quoting *Smith*, 481 Mich at 532. "The fees customarily charged . . . can be established by testimony or empirical data found in surveys and other reliable reports." *Smith*, 481 Mich at 531-532. After a trial court has calculated this baseline figure, it must consider and briefly discuss on the record the remaining *Wood* factors and the factors in MRPC 1.5(a) to determine whether any up or down adjustments from the base number are appropriate. *Id.* at 531, 533. "In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevant and use of any additional factors." *Pirgu*, 499 Mich at 282, citing *Smith*, 481 Mich at 529 n 14.

The trial court deducted 0.70 hours that attorney Robert Meisner spent attending interoffice conferences because there were no details about what was discussed during the conferences or why the conferences that Meisner attended were necessary, considering that Harris was the lead counsel on the case. Although the trial court stated that the billing entries provided no details about what was discussed during the conferences or why they were necessary, the entries do provide some details. For example, one entry of .1 hours attributed to Meisner contained the explanation "INTRAOFFICE CONFERENCE REGARDING STATUS OF COMPLAINT AND SERVICE;" another entry of .1 hours provides, "INTRAOFFICE CONFERENCE WITH BRH [HARRIS] REGARDING STATUS OF MATTER[.]" There was thus information explaining the purpose of the conferences.

Additionally, the retainer agreement between plaintiff and The Meisner Law Group states that the firm regularly holds conferences to discuss cases, strategize about how to approach cases, and delegate responsibilities to various employees in the firm to "maximize efficiency." The agreement also provides that the conferences are billable. Meisner billing for attending the conferences was not unreasonable, especially given his status as the firm's principal. Therefore, the trial court abused its discretion in deducting 0.70 hours from Meisner's time.

The trial court also abused its discretion when it deducted 1.20 hours from Harris' time for attending conferences and preparing an affidavit. The trial court stated in its opinion that "[t]he April 24, 2018, and April 25, 2018 entries indicate that Mr. Harris spent 1.20 hours engaging in an interoffice conference and preparing an affidavit to evidence claims that Virginia Kajma was deceased." First, the entries with respect to Harris for April 24, 2018, and April 25, 2018, add up to .9 hours, not 1.20. Therefore, the trial court abused its discretion for deducting 1.20 hours when only .9 hour was billed on April 24, 2018, and April 25, 2018 for Harris' services. Second, although the trial court stated otherwise, the affidavit and conferences were necessary for resolution of this case. As plaintiff notes, the affidavit was prepared to justify the expenses incurred by the process server in attempting to serve both defendants. The affidavit demonstrates that the process server made several attempts to serve defendants but was met with resistance, including, according to the process server, Linda dishonestly telling him that Virginia had passed away. Because of Linda's alleged actions and the process server's inability to serve both defendants for a period of time as a result, it was not unreasonable for Harris to prepare the affidavit. As a result, the trial court abused its discretion in reducing the time Harris billed for drafting the affidavit of the process server.

The trial court also erred in deducting time for Harris attending interoffice conferences. The trial court only reasoned that it did not see why the conferences were necessary to obtain summary disposition. However, conferences between Harris and either Duddles or Meisner were necessary for The Meisner Law Group to strategize about the case generally, to update one another on the status of the case, examine how to approach new issues, and to delegate responsibilities to effectively represent plaintiff. Therefore, the trial court abused its discretion in deducting time from Harris' billing entries for his attendance at interoffice conferences.

Plaintiff next asserts that the trial court erroneously awarded only three hours for preparing plaintiff's motion for summary disposition and its reply brief when plaintiff sought approximately ten hours for Harris' preparation of the motion and reply. Plaintiff's motion for summary disposition was 15 pages long and contained over 100 pages of attached exhibits including emails, letters, and authority. The law governing the motion was brief and standard, but the motion was factually intense. Likewise, plaintiff's reply brief was five pages long, and contained more factually significant information than applicable law (though the association bylaws were cited and relied upon in both). While the trial court found that only 3 hours was reasonable in light of Harris' years of experience and the Meisner Law Group's role as counsel for plaintiff for over 23 years, as well as the fact that this matter amounted to a debt collection action, this Court disagrees. It likely would have taken counsel a fair amount of time simply to gather and organize the exhibits attached to the briefs and to prepare the brief in a straightforward, cohesive manner. Moreover, in response to plaintiff's motion for summary disposition, Linda raised several issues and made several allegations that had not previously been addressed by plaintiff. Plaintiff thus had a duty to research and address her arguments, which ran the gamut from disputing factual assertions made by plaintiff to plaintiff purportedly disregarding that Linda had made a purported agreement for the payment of the overdue monies, and plaintiff's alleged violation of the Uniform Commercial Code. The hours billed for preparation of the motion for summary disposition and the reply brief were thus not unreasonable and the trial court abused its discretion in awarding only three hours for the same.

Plaintiff also raises issues with respect to certain of its attorney fees reduced by the trial court as purportedly duplicative of costs awarded. Plaintiff charged a flat fee for "lien package #2" of $330. The fee was stated to include conducting a register of deeds search, preparation of a lien and three-page certified letter, correspondence to the register of deeds, the association and the first mortgage holder, and "anticipated costs regarding filing." The billing submitted to the Court states, on the last page, "[c]osts **included** in the above fees and costs . . . $30[]" for a lien filing fee. The $30 filing fee was thus included in the flat rate of $330, there was no separate line item charge for the lien filing fee, and counsel did not double charge for this item. However, the trial court properly found that the court costs awarded *also* included a $30 lien filing fee thus necessitating a reduction of $30 on this item. In its motion for summary disposition, counsel sought the payment of court costs in the amount of $734.97. Among these listed "court costs" (set forth as Exhibit D to plaintiff's brief in support of its motion for summary disposition) is a $30.00 lien filing fee. The costs awarded by the trial court included the $30 lien filing fee. The same holds true for the argument concerning the complaint filing fee. As a result, the trial court did not err in reducing the above sought attorney fees to reflect that they had been awarded to counsel as costs.

Next, plaintiff asserts that the trial court improperly deducted the $322.25 charge for the title commitment from its award of costs. The trial court found that in one document the cost is designated an "abstract fee" and in another a "title commitment fee," and that regardless of the inconsistency, it could not see how the fee was necessary to obtain a judgment in this matter. However, as plaintiff points out, it was seeking foreclosure on the condominium unit. To ensure that it named the proper parties in its lawsuit for foreclosure and that it knew who any junior (or senior) lienholders on the property may be, it necessarily had to ascertain who those parties were through a title search. The trial court thus abused its discretion in not awarding plaintiff the $322.25 cost for the title commitment.

Finally, plaintiff argues that the trial court should not have focused on the amount of recovery in relation to the attorney fees incurred. We disagree.

In *Smith*, the Michigan Supreme Court indicated that trial courts can "consider making adjustments up or down" in light of the factors in *Wood* and MRPC 1.5(a). *Smith*, 481 Mich at 537. Relevant here are *Wood* factors (3) (the amount in question and the results achieved) and (5) (expenses incurred), and MRPC 1.5(a)(4) (the amount involved and the results obtained). By comparing the amount of recovery in relation to the attorney fees incurred, the trial court was simply following our Supreme Court's directive in *Smith* to consider the factors articulated in *Wood* and MRPC 1.5(a). See *Smith*, 481 Mich at 537. Therefore, the trial court did not err in focusing on the amount of recovery in relation to the attorney fees incurred, particularly when that factor was not the sole focus of the trial court.

## III. CROSS-APPEAL

On cross-appeal, defendants argue that the trial court erred when it granted summary disposition in plaintiff's favor. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of a reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotation marks and citations omitted).]

Defendants failed to contradict Crouse's affidavit that stated that defendants had an outstanding balance of $4,643.91 in delinquent assessments and $210 in late charges. Defendants did attempt to send checks to plaintiff to begin paying some of the overdue assessments, but because defendants included restrictions on the memo lines of the checks, plaintiff returned them.

-8-

Although defendants argue that plaintiff should have accepted the checks because they had done so in the past, the trial court properly recognized that Article II, Section 3 of the bylaws controlled the manner in which payments were applied:

> All payments shall be applied first against late charges, fines, attorney fees . . . expenses of collection and costs, advances for taxes or other liens paid by the Association to protects its lien, interest, and thereafter against assessments in order of oldest delinquency.

Defendants appear to have relied on checks that apparently read "dues for 2725 Roundtree" and "2725 Roundtree dues" to support their argument that plaintiff should have accepted the other checks with restrictions on them. However, the restrictions that defendants say plaintiff should have accepted were more restrictive than those that plaintiff accepted previously. The more restrictive checks said "Association dues *only*," "late fees *only*," and "condo fees for Nov *only*." Because the bylaws explicitly state that payments will be made in a specific order, defendants' attempts to bypass the bylaws was improper and the trial court did not err in concluding that plaintiff's returning of the checks with the memo-line restrictions was proper.

Defendants also suggest that they had an agreement with Crouse concerning payment of the past due assessments. For support, defendants rely on a June 19, 2017 letter to Crouse that summarizes a conversation between Linda and Crouse and that states that Linda would "bring the account up to date as soon as possible." Plaintiff's rules and regulations allow for a designated agent of plaintiff's Board of Directors to make "satisfactory arrangements" for payment of delinquent assessments. But as the trial court noted, defendants provided no evidence establishing that Linda or defendants had an agreement with the Board of Directors regarding payment of delinquent assessments, or establishing that Crouse was a designated agent of plaintiff's Board of Directors. Therefore, defendants failed to establish that they had an agreement with Crouse that met the requirements in the bylaws.

Defendants next argue that they never received notice of the delinquency in accordance with the bylaws and that, therefore, summary disposition was improperly granted in plaintiff's favor. We disagree.

In two letters dated January 20, 2017, and February 20, 2017, plaintiff sent notice of defendants' overdue assessments to defendants at the 2725 Roundtree Drive condominium. A third letter, dated May 18, 2017, was sent to 2196 Niagara because, according to a November 10, 2017 email from Crouse to Harris, the primary address was changed in plaintiff's system on "[f]ebruary 24, 2017 after [plaintiff] was notified by the postal service of change of address." Linda claims that she only received the May 18, 2017 letter and that the January 20, 2017, and February 20, 2017 letters were not provided to her until months later. However, she does not provide an affidavit stating that they never received these delinquency letters. Mere statements in a motion do not constitute evidence. Because defendants failed to rebut the evidence establishing that they were delinquent and had not paid the balance in full, the trial court did not err in granting summary disposition in plaintiff's favor.

Defendants next argue on cross appeal that the trial court erroneously failed to address whether plaintiff's conduct violated the FDCPA. Despite citing an unpublished federal district

court case, defendants provide no Michigan caselaw to support their argument about the FDCPA Defendants have thus abandoned this issue on appeal. *Houghton*, 256 Mich App at 339-340 (citations omitted). Moreover, the trial court did not err by failing to address this issue when it was never properly brought before that court. Although defendants briefly mentioned the Fair Housing Act, 42 USC 3601 *et seq*., in their response to plaintiff's motion for summary disposition, defendants never mentioned the FDCPA below. The trial court, in its opinion and order granting summary disposition, made no mention of the FDCPA and only discussed the Fair Housing Act. Because plaintiff never argued that there were alleged violations of the FDCPA, the trial court's failure to address that issue was not erroneous.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto